UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

————

JAMES MICHAEL KENNY,

                Plaintiff,                      Case No. 2:17-cv-1

v.                                        Honorable Gordon J. Quist

HEIDI E. WASHINGTON,

                Defendant.

_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff, James Michael Kenny, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendant MDOC Director Heidi E. Washington. In his complaint, Plaintiff alleges that Defendant is responsible for the MDOC's policy directives, and that his rights have been violated by Policy Directive 05.03.115 and Policy Directive 05.03.116.

Plaintiff claims that on October 24, 2016, Plaintiff requested help from the prison librarian in finding an Ohio Supreme Court case on LexisNexis because Plaintiff believed it would be helpful in his criminal appeal.  The librarian attempted to find the case for Plaintiff, but was unsuccessful.  Plaintiff states that he did not bother to ask for the case through inter-library loan services because he was indigent.  Plaintiff states that under Policy Directive 05.03.115 ¶ F, copies from other libraries become the property of the prisoner, who is then responsible for the cost of the copies and any required postage.  The policy also states that funds shall not be loaned for this purpose.

On November 21, 2016, Plaintiff was in the prison library working on his criminal appeal.  Plaintiff informed the librarian that he needed two copies of a nine page motion, which was due in one week.  The librarian asked Plaintiff if the documents could be reproduced without a copy machine, and Plaintiff indicated that they could.  The librarian looked at Plaintiff's account balance and noted that he had only seven cents remaining.  The librarian informed Plaintiff that he could not make copies because Policy Directive 05.03.116 ¶ N prohibits loans for copying a document which can otherwise be reproduced by the prisoner, except if the document is notarized or was created for the prisoner through the Legal Writer program.  Plaintiff asked the librarian how he was supposed to reproduce a "50+ page Delayed Application for Leave to Appeal when he needs at least 5 copies of that coming up very soon" for the Michigan Court of Appeals.  The librarian stated that he did not know.  Plaintiff states that it took him from 7:00 p.m. until 2:37 a.m. to manually rewrite his motion using two sheets of carbon paper.  Plaintiff states that he needed an original for the trial court, a copy for the Clinton County Prosecuting Attorney, and a copy for his records.  Plaintiff mailed out his motion later that morning after being given a legal postage loan.

On November 23, 2016, the librarian denied Plaintiff photocopies of policy directives and a director's office memorandum, which Plaintiff planned to use as exhibits.  Plaintiff was also

denied a copy of the two page form used to commence a civil rights action in federal court[1]. Plaintiff states that the librarian told him that pursuant to Policy Directive 05.03.116 ¶ O, he would have to show the librarian his pleadings to prove that the documents were required for filing with the court. Plaintiff did not file a direct appeal of his criminal conviction, and the time to file a delayed application for leave to appeal expired on November 28, 2016. Plaintiff states that he knew he would be denied copies so he filed a "motion for a directed verdict of acquittal" in the trial court, in order to "buy himself some more time." Plaintiff claims that the fact that he is being denied copies of his appellant's brief due to lack of funds violates his right of access to the courts. Plaintiff also claims that prison libraries currently have a contract with the LexisNexis Service, which is not an adequate substitute for the old law books.

Plaintiff states that Defendants violated his rights under the First, Eighth and Fourteenth Amendments. Plaintiff seeks injunctive relief.

**Discussion**

I.      Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial

---

[1]The denial of such a form could not prevent Plaintiff from filing a civil rights action because prisoners may obtain free copies of the form for filing a civil rights action from the United States Court Clerk for the Western District of Michigan upon request.

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Policy Directives 05.03.115 and 05.03.116, and the fact that the law library now relies on the Lexis database instead of law books, all violate his First Amendment right of access to the courts.  As noted above, Policy Directive 05.03.115 ¶ F provides that copies from other libraries become the property of the prisoner, who is then responsible for the cost of the copies and any required postage.  The policy also states that funds shall not be loaned for this purpose.  Policy Directive 05.03.116 ¶ N prohibits loans for copying a document which can

otherwise be reproduced by the prisoner, except if the document is notarized or was created for the prisoner through the Legal Writer program.

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts.  While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively.  *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance.  *Id.* at 351 (1996).  Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards.  *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim.  *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985).  An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994).  Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property.  *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993).

An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005); *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578 (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)).

With regard to Plaintiff's claim that he was denied copies, the Court notes that the Sixth Circuit has repeatedly held that the constitutional right of access to the courts does not entitle prisoners to free access to photocopying machinery. *See, e.g., Bell-Bey, v. Toombs*, No. 93-2405, 1994 WL 105900 (6th Cir. Mar. 28, 1994) ("the law is settled that an inmate does not enjoy a federal constitutional right to unlimited free photocopying services"); *Hawk v. Vidor*, No. 92-2349, 1993 WL 94007, *1 (6th Cir. Mar. 31, 1993) ("the right to have access to the courts is not interpreted as requiring unlimited access to photocopiers"); *Al- Jabbar v. Dutton*, No. 92-5004, 1992 WL 107016, at *1 (6th Cir. May 19, 1992) ("a prisoner's right of access to the courts does not guarantee him unlimited photocopying at the state's expense"); *Bond v. Dunn*, No. 89-6181, 1989 WL 149988, at *1 (6th Cir. Dec. 12, 1989) ("The constitutional right of access to the courts does not require that prison officials provide inmates free access to photocopying machinery."); *Fazzini v. Gluch*, No. 88-2147, 1989 WL 54125, *2 (6th Cir. May 23, 1989) ("The right of access to the courts does not require that prison officials provide free, unlimited access to photocopy machines."). In the absence of actual injury, Plaintiff fails to state a claim of constitutional significance.

Plaintiff is currently serving three concurrent sentences he received on May 26, 2016, as the result of being a fourth-degree habitual offender. Plaintiff claims that as an indigent prisoner, he was denied copies of a nine page motion that he wished to file in the state court regarding his criminal appeal. However, Plaintiff concedes that he was able to produce the copies by hand with

- 6 -

the use of carbon paper, but complains that it took several hours.  Plaintiff was able to mail out his motion the next day, on November 22, 2016.  Plaintiff states that the motion was "for a directed verdict of acquittal" and that he filed it in the trial court in order to buy himself time to file a delayed application for leave to appeal, which was otherwise due on November 28, 2016.  Plaintiff explains that he knew he would be denied copies as an indigent prisoner, and did not have enough time to make the necessary copies of his appeal by hand so that he could mail it prior to November 28, 2016.  However, Plaintiff fails to explain why he was unable to complete his appeal during the six-month period between his sentencing and the date that his delayed application was due in the Michigan Court of Appeals.  Nor does Plaintiff explain why he did not file a single copy of his application for appeal along with an explanation of his inability to complete the copies in a timely manner in an attempt to get a court order for copies to be made.  Finally, Plaintiff does not allege that any actual attempt to appeal in the Michigan Court of Appeals has been denied at this point.  Because Plaintiff fails to allege any specific facts showing that MDOC Policy Directives were the cause of any actual injury to his state court appeal, Plaintiff's access to courts claim on this basis is properly dismissed.

Plaintiff also claims he was denied copies of policy directives that he planned to use as exhibits in the instant case because he did not want to show the librarian his pleadings to prove that the attachments were necessary.  However, neither the lack of policy directives as exhibits nor the fact that Plaintiff's complaint was not filed on the proper form prevented Plaintiff from filing his complaint in this case.  In fact, as noted above, Plaintiff may obtain free copies of the complaint form by contacting the Clerk's Office and, moreover, the Court has access to the MDOC Policy Directives via the MDOC's website.  Therefore, Plaintiff was not prejudiced in his pursuit of this action by the lack of copies or the fact that he was not provided with the form for filing a § 1983 complaint.

Finally, Plaintiff claims that the shift in prison law libraries from books to an online database, such as LexisNexis, compromised his ability to pursue his legal remedies.  This assertion is clearly baseless.  *Neitzke*, 490 U.S. at 327.  Plaintiff has offered no legally supportable reason that he cannot file an action.  He desires a law library.  The right of access to the courts has never been equated with the access of legal materials at the prison library.  *Walker*, 771 F.2d at 932; *see also Lewis*, 518 U.S. at 351 (a sub-par library or legal assistance program does not establish relevant actual injury).  By his allegation that he is unable to file a lawsuit, it is clear that Plaintiff means that he was unable to file the *quality* of the lawsuit that he desired, not that he was unable to file a lawsuit at all.  Even though *Bounds* gave inmates the tools to attack their sentences and challenge their conditions of confinement, the inability of an inmate to become a "litigating engine" is "simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  *Id.* at 353-54.  Because Plaintiff cannot show actual injury or that he has suffered any litigation-related detriment, Plaintiff fails to state a claim for denial of access to the courts.

Plaintiff also claims that the provisions in MDOC Policy Directives 05.03.115 and 05.03.116, which deny indigent prisoners loans for copies of certain types of documents, violate the Equal Protection Clause of the Fourteenth Amendment because they discriminate against indigent prisoners.  The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.  A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals.  *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).  Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998).  Similarly, poverty is not a suspect or quasi-suspect classification.  *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411

U.S. 1, 28 (1973).  In addition, prisoners do not have a fundamental right to photocopies under the Constitution.

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)).  To prove his equal protection claim, Plaintiff must demonstrate the challenged policies involved "intentional and arbitrary discrimination" by the state "and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff fails to state a claim that indigent prisoners are denied equal protection by provisions in Policy Directives 05.03.115 and 05.03.116.  As noted above, Policy Directive 05.03.115 ¶ F provides:

> Librarians shall establish and maintain cooperative relationships with other libraries as set forth in PD 05.03.110 "Institutional Library Services" to enable prisoners to have access to additional legal research items through inter-library loans, when available, or to purchase photocopies of items not available in the institutional law library. If a prisoner requests the law librarian or designee to obtain an item from another library, the librarian or designee shall submit the request to the other library as soon as practicable after the request is received. Copies from other libraries become the property of the prisoner and the prisoner is therefore responsible for the cost of those copies, including any required postage; funds shall <u>not</u> be loaned for this purpose.

In addition, Policy Directive 05.03.116 ¶ N states:

> Prisoners who lack sufficient funds to pay for copies of documents in their possession, or available to them in the law library, which are necessary for the prisoner to file with the court or serve on a party to a lawsuit shall be loaned funds to pay for the copying. Funds shall not

be loaned, however, for copying a document which can otherwise be reproduced by the prisoner, except if the document is notarized or was created for the prisoner through the Legal Writer Program and as otherwise required by court order for service of a federal lawsuit.

Policy Directive 05.03.116 ¶ O provides:

> A prisoner may be required to present documentation (e.g., court rule, copy of the pleading) to show that requested copies are necessary. If the prisoner presents his/her personal legal materials, staff shall read only those portions that are necessary to determine whether the copies will be provided and, if applicable, whether funds will be loaned. If a loan is approved, it shall be considered an institutional debt and collected as set forth in PD 04.02.105 "Prisoner Funds."

> As noted above, poverty is not a suspect classification. *San Antonio Indep. Sch. Dist.*, 411 U.S. at 28. As a consequence, the prison's policy regarding copies for indigent prisoners need only be rationally related to a legitimate governmental interest. *See United States v. Kras*, 409 U.S. 434, 446 (1973); *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). In the related issue of the cost of prisoner mail, the MDOC states:

> MICH. DEP'T OF CORR., Policy Directive 05.03.118 ¶ J. The state unquestionably has an interest in limiting the cost of mailing charges it incurs on behalf of indigent prisoners. The requirement of a court order constitutes an entirely rational basis for effecting that interest. Moreover, the policy does not preclude a prisoner from pursuing his claims, it merely requires that the prisoner obtain the necessary order. And the policy expressly instructs the prisoner that he must seek a court order for substituted service or to use certified mail.

The Court concludes that this interest is equally applicable to the cost of prisoner copies. Moreover, the policies challenged by Plaintiff do not preclude a prisoner from pursuing his claims, but merely limit copies to the items which are actually required in order to pursue those claims and to those items which cannot be replicated in another fashion. Therefore, Plaintiff's Fourteenth Amendment claim is properly dismissed.

Finally, Plaintiff claims that MDOC policies regarding copies violate the Eighth Amendment because requiring a prisoner to make numerous copies by hand constitutes cruel and

unusual punishment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. The Court concludes that the act of copying documents by hand does not rise to the level of an Eighth Amendment deprivation. Therefore, Plaintiff's Eighth Amendment claim is properly dismissed.

- 11 -

**<u>Conclusion</u>**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  July 21, 2017                                   /s/ Gordon J. Quist
                                                      GORDON J. QUIST
                                                 UNITED STATES DISTRICT JUDGE


- 12 -